UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE ERIC RAMOS, : | |
|     Plaintiff, : | |
| : | |
|     v. : | Case No. 3:15cv1444(VAB) |
| : | |
| DEPARTMENT OF : | |
| CORRECTION, *et al.*, : | |
|     Defendants. : | |

## RULING AND ORDER

Plaintiff, Jose Eric Ramos, is currently confined at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut. He has filed a complaint under 42 U.S.C. § 1983 naming as Defendants the Department of Correction, Reverend Anthony J. Bruno, Counselor Arcouette, and John Doe Commissioner of the Department of Correction. For the reasons set forth below, the Complaint is dismissed in part.

Under 28 U.S.C. §1915A(a)-(b), the Court must review civil complaints filed by prisoners against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A complaint that includes only "'labels and conclusions,' [ ]'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (second alteration in original)).  Although courts have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

Mr. Ramos claims that he is a member of the Santeria religion.  Compl. at Stmt. of Case ¶1, ECF No. 1.  He alleges that, on an unidentified date, he contacted Reverend Bruno seeking to order tarot cards in order to practice his religion.  *Id.*  He claims that Reverend Bruno did not respond to his request.  *Id.* ¶2.  He also alleges that a prison counselor placed an order for tarot cards on his behalf.  *Id.*  Mr. Ramos alleges that Reverend Bruno subsequently blocked that order for tarot cards.  *Id.* ¶3.  Reverend Bruno allegedly informed Mr. Ramos that he must sign a use agreement with regard to the tarot cards and that the tarot cards must be ordered from a specific vendor.  *Id.* ¶3.  Mr. Ramos claims that he complied with these requirements, but has never received the tarot cards.  *Id.* ¶4.  Nor was the money that had been withdrawn from his prison account to pay for the cards credited to his account.  *Id.*

Mr. Ramos claims that his attorney contacted the Commissioner of the Department of Correction about the tarot cards, but no action has been taken as of the filing of his Complaint. *Id.* ¶5.  He also alleges that other inmates order Catholic and Muslim religious items on a weekly basis.  *Id.* ¶6.

In addition, Mr. Ramos alleges that Counselor Arcouette denied him the opportunity to make a legal telephone call to his attorney on one occasion. *Id.* ¶9. He claims that he suffered mentally and emotionally because he could not call his attorney. *Id.* ¶10.

## I. Official Capacity Claims

Mr. Ramos seeks injunctive relief and monetary damages. Compl. at Request for Relief, ECF No. 1. To the extent he seeks money damages against the Defendants in their official capacities, the claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) (explaining that official capacity claims are equivalent to actions against the state and that Eleventh Amendment immunity applies); *Quern v. Jordan*, 440 U.S. 332, 339-40, 343, 345 (1979) (noting that section 1983 did not abrogate sovereign immunity of the states). All such claims are dismissed under 28 U.S.C. § 1915A(b)(2).

## II. Department of Correction as a Defendant

The Department of Correction is mentioned only in the caption of the Complaint and description of the parties. To state a claim under section 1983, the plaintiff must allege facts showing that the defendant, a person acting under color of state law, deprived him of a federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982) (citing *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978)).

The Department of Correction is not a person subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65, 71 (1989) (holding that state and state agencies are not persons within meaning of 42 U.S.C. § 1983); *Fisher v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (per curiam) (state prison department cannot be sued under section 1983 because it does not fit the definition of "person" under section 1983).

3

Furthermore, Mr. Ramos has not alleged that the Department of Correction violated any of his federally or constitutionally protected rights. He also includes a notation on the first page of the Complaint indicating that he is willing to remove the Department of Correction as a Defendant in the action. Accordingly, all claims against the Department of Correction are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### III.     Access to Courts Claim

Mr. Ramos claims that Counselor Arcouette deprived him of access to the courts because he refused to grant his request for a legal telephone call. It is well settled that inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977)). To state a claim for denial of access to the courts, the plaintiff is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *Id.* at 351-55. To establish an actual injury, Mr. Ramos must allege facts showing that the Defendant took actions or was responsible for actions that hindered his efforts to pursue a legal claim. *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997), *cert. denied*, 525 U.S. 823 (1998).

Mr. Ramos alleges that his attorney sent him a letter and asked him to contact him by telephone. He claims that Counselor Arcouette denied his request to make a telephone call to his attorney on one occasion. He does not indicate that he asked to make the call on another occasion or that he could not communicate with his attorney in writing. Nor does Mr. Ramos allege that his lack of access to his attorney via telephone on one occasion prejudiced a legal claim in any way. Accordingly, Mr. Ramos's Complaint does not allege facts that meet the injury requirement for an access to the courts claim. *See Palmer v. Simple*, No. 3:13-cv-

4

226(SRU), 2013 WL 6178530, at *3 (D. Conn. Nov. 21, 2013) (allegation that defendants refused to permit inmate to make legal telephone calls to attorney failed to state a claim of denial of access to courts because inmate had other ways to communicate with attorney and did not allege "specific facts" showing that he had been injured or prejudiced); *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) (inmates have no right to unlimited telephone calls and states do not have an obligation to provide the "best manner of access to counsel"); *Pino v. Dalsheim*, 558 F. Supp. 673, 674-75 (S.D.N.Y. 1983)(finding that restrictions on telephone calls were constitutionally permissible because inmate had unlimited opportunities to communicate with his attorney by written correspondence or personal visits, even though attorney's office was located over 300 miles from prison facility). Mr. Ramos's claim regarding denial of access to legal telephone calls is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**IV.  Equal Protection and Free Exercise Claims**

Mr. Ramos also brings claims under the First and Fourteenth Amendments. For the reasons that follow, the Court finds that, at this time, he has plausibly stated a claim under both of these amendments.

"The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.'" *Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)) (in the context of race); *see also Lown v. Salvation Army, Inc.*, 393 F. Supp. 2d 223, 235 (S.D.N.Y. 2005) ("The Equal Protection Clause prohibits the government from subjecting individuals to 'selective treatment… based on impermissible considerations such as… religion.'") (alterations in original) (quoting *Knight v. Conn. Dep't of Public Health*, 275 F.3d

156, 166 (2d Cir. 2001)).  To state an equal protection claim based on religion, Mr. Ramos must allege that the Defendants treated him differently than others who were situated similarly to him, because the Defendants were intentionally or purposefully discriminating against him.  *See Barnes*, 926 F. Supp. 2d at 506 (citing *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)) (in the context of race); *see also Miner v. Clinton Cnty.*, 541 F.3d 464, 474 (2d Cir. 2008) (citation omitted); *Lown*, 393 F. Supp. 2d at 235 (citations omitted).

Mr. Ramos alleges that he was treated differently because of his religion.  He claims that inmates of other religious faiths are permitted to possess various religious artifacts that are central to the practice of their religions and that he is not permitted to possess tarot cards in practicing his religion.  Accordingly, the Court concludes that, at this time, Mr. Ramos has stated a plausible Fourteenth Amendment equal protection claim against Defendants Bruno and the Commissioner of Correction.

Mr. Ramos also alleges that he is unable to practice his religion without the tarot cards.  The Court construes these allegations to raise claims under the First Amendment's Free Exercise Clause and under the Religious Land Use and Institutionalized Persons Act, ("RLUIPA") 42 U.S.C. § 2000cc, *et seq.*.

To state a claim under the Free Exercise Clause of the First Amendment, a plaintiff must allege that a prison regulation or practice impinged on the practice of his religion and that the regulation or policy was not reasonably related to a legitimate penological interest.  *See Turner v. Safely*, 482 U.S. 78, 89 (1987); *see also Ford v. McGinnis*, 352 F.3d 582, 588-96 (2d Cir. 2003) (summarizing the law applicable to a free exercise claim).  In making this determination, courts in the Second Circuit consider "(1) whether the practice asserted is religious in the person's

scheme of beliefes, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials further some legitimate penological objection." *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (citation omitted).  To state a claim under RLUIPA, a plaintiff must allege that the prison regulation or policy at issue imposes a "substantial burden" on his religious exercise without promoting a compelling government interest that is advanced through the least restrictive means possible.  *See* 42 U.S.C. §2000cc-1(a); *see also Woodward v. Perez*, No. 12 CV. 8671(ER), 2014 WL 4276416, at *6 (S.D.N.Y. Aug. 29, 2014) ("RLUIPA offers similar protections to prisoners as the Free Exercise Clause but 'heightens the standard for both plaintiffs and defendants.'") (citation omitted).

After careful review, the Court concludes that, at this time, Mr. Ramos, has stated a plausible claim of interference with his right to practice his religion under both the First Amendment's Free Exercise Clause and RLUIPA against Reverend Bruno and the Commissioner of Correction.

### ORDERS

The Court enters the following orders:

(1)     The claims for money damages against the Defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(2).  All other claims against Department of Correction and Counselor Arcouette are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).  The First Amendment, Fourteenth Amendment, and RLUIPA claims shall proceed against the Commissioner of Correction and Reverend Bruno in their individual and official capacities.

**Because Mr. Ramos has not identified the Commissioner of Correction by name and does not include the dates on which the alleged deprivation of his rights occurred, neither the United States Marshal, nor the Clerk are able to serve a copy of the complaint on this defendant in his individual or official capacities.  Within sixty (60) days of the date of this Order, Mr. Ramos shall file a notice indicating the first and last name of the Commissioner of Correction that he claims was in office at the time Reverend Bruno allegedly failed to provide him with religious tarot cards.   If Mr. Ramos fails to identify the Commissioner by name within the time specified, the claims against the John Doe Commissioner of Correction will be dismissed.**

(2)     **Within twenty-one (21) days of this Order**, the U.S. Marshals Service shall serve the summons, a copy of the Complaint and this Order on Defendant Bruno in his official capacity by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3)     **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work address for Reverend Anthony J. Bruno and mail a waiver of service of process request packet to Defendant Bruno in his individual capacity at his current work address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request.  If Defendant Bruno fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) Defendant Bruno shall file his response to the Complaint, either an answer or motion to dismiss, **within sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him.  If the Defendant chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above.  He may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this Order.  Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this Order.

SO ORDERED at Bridgeport, Connecticut this 24th day of February 2016.

      /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE